UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNIVERSITY OF FLORIDA
RESEARCH FOUNDATION, INC.,

    *Plaintiff*,

v.                          CASE NO. 1:16CV183-MW/GRJ

MEDTRONIC PLC,
MEDTRONIC, INC., AND
COVIDIEN LP,

    *Defendants*.
_____/

**ORDER REMANDING CASE TO STATE COURT**

Plaintiff, the University of Florida Research Foundation, Inc. ("UFRF") filed suit in state court against Defendants alleging breach of a licensing contract. ECF No. 13-1, at 145. It is arguable that UFRF's "right to relief [on the contract claims] necessarily depends on resolution of a substantial question of federal patent law," and that therefore the suit could have been (actually, should have been) filed in federal court. *See Holmes Grp., Inc. v. Vernado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002). It is also possible that, unless UFRF is an arm of the State of Florida, there is complete diversity between the parties and more than $75,000 at

1

stake. *See* ECF No. 43, at 26–27. Under either of these scenarios, Defendants could have properly removed this case to federal court.

While this case was still in state court, Defendants[1] brought a counterclaim seeking a declaratory judgment to the effect that they have not infringed the patent at the center of the licensing agreement. *See* ECF No. 13-1, at 284–85. Under an odd new removal statute, this counterclaim could be an independent basis for removal. *See* 28 U.S.C. §1454 ("A civil action in which *any party* asserts a claim for relief arising under any Act of Congress relating to patents . . . may be removed to the district court of the United States for the district and division embracing the place where the action is pending. . . . The removal of an action under this section shall be made in accordance with section 1446, except that if the removal is based solely on this section . . . the action may be removed by *any party*.") (emphasis added).

Defendants removed this case in late May, asserting all three of the aforementioned bases for removal. *See* ECF No. 1, at 1. UFRF timely filed a motion to remand, ECF No. 31, arguing that

---

[1] Technically, only Defendant Covidien LP brought a counterclaim. ECF No. 13-1, at 256. As in many cases, it appears that there may be some unnecessary and/or duplicative defendants. For sake of clarity, this Court will refer to "Defendants" throughout.

(1) it is an arm of the State of Florida and therefore cannot be a "diverse" party for purposes of diversity jurisdiction, (2) its claims as pleaded in the amended complaint do not arise under federal law, and (3) Defendants' counterclaim does not form a basis for removal under §1454 because it is not a compulsory counterclaim and because UFRF enjoys Eleventh Amendment immunity from suit in federal court which cannot be overcome by §1454. UFRF also filed a motion to dismiss Defendants' counterclaim in which it argues more forcefully that it is entitled to Eleventh Amendment immunity. ECF No. 23.

If UFRF is entitled to Eleventh Amendment immunity, and if it has not waived that immunity, then this case must be remanded back to state court. For Eleventh Amendment immunity is, in part, an immunity from *suit* in federal court, not just an immunity from certain types of relief. *See, e.g.*, *Stroud v. McIntosh*, 722 F.3d 1294, 1301 (11th Cir. 2013). When a state entity finds itself in federal court involuntarily, it may assert its Eleventh Amendment privilege to be free "from being compelled to appear in the courts of another sovereign against [its] will." *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001);

see also *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 622 (2002).

**Is UFRF Entitled to Eleventh Amendment Immunity?**

In determining "whether [an] entity . . . is an arm of the state," the circumstances "must be assessed in light of the particular function in which the [entity] was engaged when taking the actions out of which liability is asserted to arise." *Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1303 (11th Cir. 2005) (quoting *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc)). "To determine whether [an entity], while engaged in the relevant function, acts as an arm of the state, we conduct a four-factor inquiry, taking into account (1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) the source of the entity's funds; and (4) who bears financial responsibility for judgments entered against the entity." *Id.* (citing *Manders*, 338 F.3d at 1309).

Here, the "relevant function" is the licensing of patents and the collection of royalties from those license agreements. UFRF undertakes this function "for the benefit of a state university in Florida"—namely, the University of Florida—and pursuant to a certification by the University of Florida Board of Trustees that it is

4

"operating in a manner consistent with the goals of the university and in the best interest of the state." §1004.28(1)(a), Fla. Stat. (2015). And UFRF does not have free reign—"[t]he board of trustees, in accordance with rules and guidelines of the Board of Governors, . . . prescribe[s] by rule conditions with which [UFRF] must comply in order to use property, facilities, or personal services at any state university. Such rules . . . provide for budget and audit review and oversight by the board of trustees." *Id.* §1004.28(2)(b).

The University of Florida Board of Trustees has made such rules. For instance, it requires UFRF (and all other organizations of its kind) to "have Articles of Incorporation and Bylaws that together . . . [p]rovide that the chief executive officer or director . . . shall be selected and appointed by the governing board . . . with prior approval of the President of the University, and that the chief executive officer or director shall report to the President or a designee reporting directly to the President." Fla. Admin. Code R. 6C1-1.300.(2)(b).

UFRF's bylaws further limit its independence from the University and the State of Florida. For instance, the "annual operating budget . . . must be approved by . . . the President of the University or his or her designee who shall be a Vice President or other

5

senior finance or business officer of the University reporting directly to the President or to a senior official who reports to the President." ECF No. 23-1, at 14.[2] And "[a]ny Director may be removed for cause by the President of the University or his or her designee after consulting with the nonaffected Directors of the corporation or the Board's authorized designee acting in an executive capacity." *Id.* at 8.

All of this suggests that UFRF is controlled by the state. Indeed, the Florida Supreme Court recently held that the University of Central Florida Athletics Association—like UFRF, an entity organized under §1004.28—was entitled to limited sovereign immunity under §768.28, Florida Statutes as "an instrumentality of the state." *Plancher v. UCF Athletics Ass'n, Inc.*, 175 So. 3d 724, 729 (Fla. 2015). In reaching this conclusion, the court relied on many of the same features that are present in this case, including the university's control over the entity's board of directors, *id.* at 728, and the university's control over the entity's bylaws, *id.* It's

---

[2] The bylaws were included as an attachment to UFRF's motion to dismiss, ECF No. 23. In ruling on a motion to remand, courts may consider such evidence. *See Lamonica v. Brown Nursing Home, LLC*, No. 3:15cv326–SRW, 2015 WL 9008449, at *6 n.5 (M.D. Ala. Dec. 15, 2015); *accord Ambridge v. Wells Fargo Bank, N.A.*, No. 8:14–cv–1212–EAK–TBM, 2014 WL 4471545, at *3 (M.D. Fla. Sep. 10, 2014).

6

true that the court in *Plancher* was not determining the entity's *Eleventh Amendment* immunity, but, as it noted, its analysis of sovereign immunity under state law was similar to that employed in the Eleventh Amendment context; the "focus [in each case is] upon governmental control over the" entity. *Id.* at 727.

  The *Plancher* decision is important not only because of the parallels between the factual situation in that case and in this case—which bears on the "degree of control" factor—but also because it makes clear that entities like UFRF are considered arms of the state under state law. If UFRF would be afforded sovereign immunity under §768.28, that suggests that it is considered under Florida law to be an instrumentality of the state. It's true that "an entity may be a state establishment for purposes of the state constitution and state statutes, [but] may also exercise sufficient independence so that it cannot claim [E]leventh [A]mendment immunity as an arm of the state under federal law." *Magula v. Broward Gen. Med. Ctr.*, 742 F. Supp. 645, 648 (S.D. Fla. 1990). But the state's characterization is still relevant to the Eleventh Amendment analysis.

  There is not a tremendous amount of evidence in the record that bears on the other two factors. It appears that UFRF derives

7

much of its income from "development and commercialization of University work products." ECF No. 23-1, at 28. In the patent context, this means that UFRF takes the inventions of UF researchers,[3] profits from them, and then feeds some, perhaps most, of that money back into the school. So in a sense UFRF is "funded" by the state, in that it relies on the raw input of patents, etc. from state employees to make money. Admittedly, this is not state "funding" in the traditional sense—the state legislature does not appear to be appropriating money to fund UFRF. *Cf. Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 101 (1st Cir. 2002) (state lottery commission an arm of the state in part because "the state government[] . . . approve[d] and appropriate[d] [its] annual budget"). But it also involves more reliance on the state than the case of, say, a city or county school board that can raise revenue through bonds and taxes. *See, e.g.*, *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,

---

[3] When someone at the University invents something, she is supposed to report it to the school. "Under the requirements of the Bayh-Dole Act and University of Florida policy, University employees must disclose all intellectual property created by them to the Office of Technology Licensing. The University of Florida will own this intellectual property unless specifically waived back to the funding agency and/or the inventor(s)." *Should I Disclose?*, Office of Technology Licensing, University of Florida, http://research.ufl. edu/otl/for-uf-inventors/should-i-disclose.html (last visited July 14, 2016).

429 U.S. 274, 280 (1977) ("[The school board] . . . receives a significant amount of money from the State. . . . But local school boards have extensive powers to issue bonds . . . and to levy taxes within certain restrictions of state law.").

As for who would pay a money judgment against UFRF, there is simply no indication in the record. It should be said, though, that any financial harm to UFRF would harm the University of Florida, which is indisputably an arm of the state.

Putting all this together, this Court is convinced that UFRF is an arm of the state—at least for the purposes of this case—and that it is entitled to Eleventh Amendment immunity.

There is one argument that Defendants make in response to this that needs to be addressed. Defendants ask this Court to hold off on resolving the Eleventh Amendment immunity question "in order to allow [Defendants] to conduct discovery into UFRF's claim of sovereign immunity. . . . This inquiry is fact-intensive, and cannot be resolved without discovery of facts that are beyond the knowledge of [Defendants]." ECF No. 34, at 24; ECF No. 43, at 28–29. Defendants cite a recent case in which a court allowed the parties limited discovery to determine whether a university-affiliated

research center was entitled to Eleventh Amendment immunity. *See Moore v. Univ. of Kan.*, 124 F. Supp. 3d 1159 (D. Kan. 2015).

This Court does not think any discovery is needed in this case. The court in *Moore* seemed troubled by what might be termed the "financial factors" in the arm-of-the-state analysis. *See Moore*, 124 F. Supp. 3d at 1168–70. But giving these factors too much weight ignores the meaning of the Eleventh Amendment. "The Eleventh Amendment does not exist solely in order to prevent federal-court judgments that must be paid out of a State's treasury; it also serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996) (internal citations, quotations, and alterations omitted). Even assuming that UFRF could afford to pay out on judgments against it, the remaining factors would render it an arm of the state. *Cf. United States ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 804 F.3d 646, 651 (4th Cir. 2015) ("If the state treasury will not be liable for a judgment rendered against the entity, we must consider the remaining factors, which focus on the nature of the relationship between the state and the entity it created.").

**Has UFRF Waived Its Immunity?**

The key question vis-à-vis waiver is whether UFRF is in federal court voluntarily. Clearly UFRF did not file suit in a federal forum, nor did it remove this case to federal court. Either of these actions would have amounted to a waiver of UFRF's Eleventh Amendment immunity from suit in federal court, though not necessarily a waiver of its immunity from all forms of claims for relief.

Normally, this would settle the matter. But there's an odd twist in this case thanks to the recently-amended patent jurisdiction statutes. The problem is this: when a state entity files a patent suit in *federal* court, it waives any Eleventh Amendment immunity it might have to a compulsory counterclaim. *Regents of Univ. of N.M. v. Knight*, 321 F.3d 1111, 1125 (Fed. Cir. 2003). In this case, suit was filed in *state* court, but the state court doesn't have jurisdiction over the counterclaim under the new version of 28 U.S.C. §1338. *See Vermont v. MPHJ Tech. Inv., LLC*, 803 F.3d 635, 644 (Fed. Cir. 2015). Defendants argue that this leaves them in an untenable situation—the state court can't hear their counterclaim, but they'll lose it if they don't bring it, and the federal court can't hear the case at all if UFRF is allowed to raise an Eleventh Amendment immunity defense. The way out of this, they argue, is to treat

11

UFRF as having waived its immunity from suit in federal court and from the counterclaim,[4] just as it would have had it originally filed in federal court. ECF No. 34, at 23–24.

There's some force to this argument. If a state entity brings a claim in state court *knowing* that it will trigger a compulsory counterclaim that is outside the jurisdiction of the state court, then it has in some sense voluntarily availed itself of a federal forum by setting in motion a series of events that will inevitably lead it to federal court. If it were clear in this case that Defendants' counterclaim is compulsory, there might be good reason to treat the initial act of bringing the suit to be a waiver of immunity. But it's not clear—the parties, in fact, hotly dispute this.[5] Under these circumstances, treating UFRF's conduct as a waiver of immunity seems almost as unfair as effectively shutting the door on Defendants' counterclaim. As UFRF points out, an automatic waiver rule even

---

[4] Defendants don't differentiate between immunity from suit and immunity from liability, but their argument suggests that UFRF should be deemed to have waived both in this case.

[5] Defendants claim that "UFRF had full knowledge of [the] compulsory counterclaim—UFRF asserted it on multiple occasions in conjunction with its audit demand that the Disputed Products are Licensed Products, and [Defendants] explicitly identified this issue as one for mediation." ECF No. 34, at 24. All this shows is that UFRF knew that there was a counterclaim, not that it knew it was compulsory. UFRF has a colorable argument that the counterclaim is not compulsory. ECF No. 31, at 18–19; ECF No. 23, at 7–11.

when a counterclaim is not clearly compulsory would effectively force state entities to waive Eleventh Amendment immunity in any case involving patents by allowing defendants to "fil[e] meritless counterclaims that relate to 'patent issues' not presently raised or contested by the sovereign." ECF No. 31, at 17.

The way out of this quandary lies, somewhat surprisingly, in the doctrine of claim preclusion. Federal courts normally give res judicata effect to state court judgments under the full faith and credit statute, 28 U.S.C. §1738. *See, e.g.*, *McDougald v. Jenson*, 786 F.2d 1465, 1485 (11th Cir. 1986). And in determining what effect that judgment should have, it is the claim preclusion law of the *state* that matters. *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).

Under Florida law, a dismissal without prejudice lacks res judicata effect. *See Markow v. Am. Bay Colony, Inc.*, 478 So. 2d 413, 414 (Fla. 3d DCA 1985). And a dismissal for lack of jurisdiction is, of course, without prejudice. *See, e.g.*, *Grocery Mktg., Inc. v. White Lion Foods, Inc.*, 775 So. 2d 997, 998 (Fla. 4th DCA 2000) (mem. disposition). So if Defendants were to bring their counterclaim in state court and UFRF moved to dismiss on jurisdictional grounds, the counterclaim would be dismissed without prejudice,

13

and Defendants would not be barred from bringing the claim as a separate claim in federal court at a later time.

In fact, Defendants don't even have to jump through these hoops. "Florida does not permit preclusion unless the prior court had jurisdiction over the claim." *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 84 F.3d 1388, 1393 (11th Cir. 1996). In *Aquatherm*, for instance, the court held that the plaintiff's claims "under antitrust laws that are within the exclusive jurisdiction of the federal courts and therefore could not have been raised in the state court proceeding due to lack of subject matter jurisdiction" were not barred by res judicata. *Id.* at 1391. The same logic applies here—Defendants cannot be barred from bringing a counterclaim that they couldn't have brought in the first place.

In sum, if Defendants' counterclaim is *not* compulsory, then in no sense has UFRF voluntarily submitted to a federal forum, and it is entitled to raise Eleventh Amendment immunity from suit as a defense. If Defendants' counterclaim *is* compulsory, then at least under these circumstances—where the compulsory nature is not so evident as to raise an inference that UFRF knew the counterclaim would have to be brought, leading inevitably to federal court—UFRF still cannot be said to have voluntarily submitted to

a federal forum. Furthermore, the unfairness that Defendants worry about will not come to pass, as the impossibility of bringing their counterclaim in state court will prevent their failure to do so from having claim preclusive effect in federal court.

This result may seem odd—after all, it prevents the state court from overseeing the litigation of a counterclaim that it would normally require to be litigated. But the "interest in judicial economy" underlying a state's compulsory counterclaim rules "is . . . local in scope." *Chapman v. Aetna Finance Co.*, 615 F.2d 361, 363 (5th Cir. 1980). The concerns underlying both the Eleventh Amendment and the federal courts' exclusive jurisdiction over patent disputes must trump these local concerns when they come into conflict.[6]

### Attorneys' Fees

UFRF asks that this Court force Defendants to pay its attorneys' fees connected to removal because removal was "improper." ECF No. 31, at 20. "Absent unusual circumstances, courts may

---

[6] One might wonder whether UFRF is simply immune from suit in patent cases. Suppose Defendants wanted to bring their counterclaim as a separate claim in a new case. They'd have to do it in federal court, but UFRF could then claim Eleventh Amendment immunity. The way out of *this* quandary is *Ex parte Young. See Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1341–43 (Fed. Cir. 2006) (discussing how the *Ex parte Young* doctrine can be used to bring patent cases against state university officials).

award attorney's fees under §1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Defendants clearly had an objectively reasonable basis for seeking removal—if this Court had found that UFRF wasn't an arm of the state, then there would have been at least one, possibly two, and perhaps three independent bases for removal. And the question of whether UFRF is an arm of the state, while maybe not a close one, is certainly debatable.

## Conclusion

UFRF is an arm of the state and is entitled to Eleventh Amendment immunity from suit in a federal forum. UFRF is here involuntarily. Therefore, this case must be remanded back to state court.

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's motion to remand, ECF No. 31, is **GRANTED IN PART, DENIED IN PART**. To be clear, the motion is only denied to the extent Plaintiff seeks attorneys' fees.

2. The remaining motions—ECF Nos. 15, 23, 37, & 44—are **DENIED as moot**.

3. The Clerk must take all steps necessary to **REMAND** this action to the Circuit Court for the Eighth Judicial Circuit, Alachua County, Florida.

4. The Clerk must close the file.

**SO ORDERED on July 15, 2016.**

          **s/Mark E. Walker**
          **United States District Judge**